## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.                                No. 22-cr-1723-WJ

EDWIN PADILLA,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## REJECTING PROPOSED RULE 11(c)(1)(C) PLEA AGREEMENT

**THIS MATTER** comes before the Court following a hearing on Defendant's Sentencing Memoranda (**Doc. 33**) and the United States' Sentencing Memorandum (**Doc. 34**). Having reviewed the pleadings of the parties and the reports from the United States Probation Office (**Docs. 30, 35, 40**), heard the oral arguments of counsel, and considered the applicable law, the parties' request that the Court accept the Rule 11(c)(1)(C) plea agreement (**Doc. 36**) to a specific sentence of 12 months and 1 day incarceration is not well-taken, and is, therefore, **REJECTED.**

## BACKGROUND

Defendant Edwin Padilla is charged with conspiracy pursuant to 8 U.S.C. § 1324(a)(1)(A)(v)(I) for transporting and harboring illegal aliens (the Count). **Doc. 13**. Padilla reached a plea agreement with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) for a specific sentence of 12 months and 1 day of incarceration on the Count. **Doc. 27, ¶ 11(a)**. After reaching the Rule 11(c)(1)(C) deal, the United States Probation Office ("Probation") released Padilla's Pre-Sentence Report ("PSR"), in which Probation calculated the United States

1

Sentencing Guidelines ("Sentencing Guidelines") range to be 30–37 months, with a total offense level 17 and criminal history category III. **Doc. 30, PSR, ¶ 78**.

In his plea agreement, Padilla made the following admission:

> On or between September 27, 2021 and September 27, 2022 in Bernalillo County in the District of New Mexico and elsewhere, I agreed with another person to transport and harbor aliens. Specifically, I agreed with my co-conspirator (whose identity is known to me) that my co-conspirator would travel from Dallas to Albuquerque, to my residence located at 237 90th Street SW, 87121, (the two-story structure at that address). Once he arrived, my co-conspirator would pick up two to three undocumented non-citizens and drive them to Dallas. I paid my co-conspirator for related expenses . . . . On September 27, 2022, Homeland Security Agents found approximately 28 undocumented non-citizens in my residence. I knew these people were present in the United States illegally, and I agreed to harbor them at my residence so that they would remain undetected by law enforcement. I harbored them for monetary gain. I entered the conspiracy knowing that the objective was to harbor and transport aliens, and I voluntarily involved myself in the conspiracy.

**Doc. 27, ¶ 9**.

Without Defendant Padilla's acceptance of responsibility, the Sentencing Guidelines range would be 41–51 months. **Doc. 30, PSR, ¶ 79**. In addition to the baseline offense, the Sentencing Guidelines range calculations were increased for: (1) harboring 25–99 unlawful aliens, and (2) possessing a firearm. **Doc. 30, PSR, ¶¶ 23–24**. Defendant Padilla does not dispute the factual basis for either increase. **Doc. 33**. Instead, he argues "[s]uch a weak connection between the gun and the alien smuggling supports a variance from the guideline range." ***Id.*** Essentially, despite the enhancement being "appropriate," Defendant Padilla takes issue with the resultant 6–7 month increase in time incarcerated. **Doc. 33 at 2–3**; **Doc. 30, PSR, ¶ 24**. The Defendant asserts the Sentencing Guidelines range would be 24–30 months without this gun-related increase. **Doc. 33 at 3**. The Government explicitly disavows any "significant hearsay and confrontation problems" as levied by the Defendant; instead explaining the plea agreement is largely the result of the logistical hurdles stemming from the cooperating witness's pending prosecution in New York.

**Doc. 33 at 3–5; Doc. 34 at 2–3**. The Government emphasizes this witness's unavailability by placing it on a pedestal as a "justifiable reason" for accepting the plea, but simultaneously disregards the available would-be testimony from law enforcement on-scene during the execution of the September 27, 2022, search warrant. **Doc. 30, PSR, ¶¶ 13–14; Doc. 34 at 2.** Despite the inconvenience associated with transporting the coconspirator-witness between New York and New Mexico, the Court is not convinced this reason justifies deviating so significantly from the guidelines—given the presumptive availability of law enforcement and other corroborating witnesses. **Doc. 2 at 7; Doc. Doc. 30, PSR, ¶¶ 13–15**. As it stands, Padilla has justifiably reduced his exposure between 11–14 months by accepting responsibility—yet he and the Government have entered into a Rule 11(c)(1)(C) plea that further reduces his term of imprisonment by another 18–25 months (this time without sufficient justifiable reasons). Ultimately, both parties hang their hat on issues with a cooperating Government witness the driving force for this deal. *Id.* On its face, this plea agreement fails to take into account the Sentencing Guidelines, the nature and circumstances of the offense, the seriousness of the offense, the PSR, or Defendant Padilla's behavior while incarcerated—wherein he, again, possessed contraband (namely, fentanyl and methamphetamine). **Doc. 40, Second Add. to PSR at 1**.

After evaluating the Defendant's applicable Sentencing Guidelines range and the § 3553(a) factors, the Court rejects the Rule 11(c)(1)(C) plea agreement proposed by Padilla and the Government because a specific sentence of 12 months and 1 day is not sufficient to satisfy the goals of sentencing.[1]

---

[1] The Court notes, of course, that Padilla has the opportunity to withdraw his guilty plea in light of the Court's rejection of the Rule 11(c)(1)(C) plea agreement. *See United States v. Byrum*, 567 F.3d 1255, 1261 (10th Cir. 2009); Fed. R. Crim. P. 11(c)(5).

**DISCUSSION**

I.      **Relevant law on Rule 11(c)(1)(C) plea agreements**

Federal Rule of Criminal Procedure 11(c)(1)(C) allows the prosecution and the defendant to agree to a specific sentence range—and if accepted by the Court—then it is bound to impose a sentence within the agreed upon range. Fed. R. Crim. P. 11(c)(1)(C). Given that "sentencing is within the exclusive purview of the district court, the court has a wide range of discretion to either accept or reject sentence bargains, as contemplated by Rule 11(c)(1)(B) and (C)." *United States v. Macias-Gonzalez*, 219 F. App'x 814, 817 (10th Cir. 2007). Federal sentencing law requires the sentencing judge to impose "a sentence sufficient, but not greater than necessary," to accomplish the goals of sentencing, the Sentencing Guidelines, and other § 3553(a) factors. 18 U.S.C. § 3553(a). Although the Sentencing Guidelines are not binding, "[i]n deciding whether to accept an agreement that includes a specific sentence, the district court must consider the Sentencing Guidelines." *Hughes v. United States*, 138 S. Ct. 1765, 1773 (2018); *see United States v. Lewis*, 398 F. Supp. 3d 945, 983–84 (D.N.M. 2019), *on reconsideration in part*, 432 F. Supp. 3d 1237 (D.N.M. 2020) ("Even when a defendant enters into a binding, 11(c)(1)(C) agreement, the district court must still consider the Sentencing Guidelines, and "may not accept the agreement unless the sentence is within the applicable Guidelines range, or it is outside that range for justifiable reasons specifically set out.") (citing *Hughes*, 138 S. Ct. at 1769); *United States v. Dodds*, 772 F. App'x 733, 735 (10th Cir. 2019) ("[T]he Sentencing Guidelines prohibit district courts from accepting [Rule 11(c)(1)(C)] agreements without first evaluating . . . the defendant's Guidelines range . . . .") (citing *Hughes*, 138 S. Ct. at 1776).

The Tenth Circuit has explained "Rule 11 vests district courts with the discretion to accept or reject plea agreements" without defining the specific criteria to apply. *United States v.*

4

*Robertson*, 45 F.3d 1423, 1437 (10th Cir. 1995); *see also Morgan v. United States Dist. Court (In re Morgan)*, 506 F.3d 705, 710 (9th Cir. 2007) ("[N]owhere does Rule 11 define the criteria by which a district court should exercise the discretion the rule confers, or explain *how* a district court should determine whether to accept a plea agreement."). So long as a district court exercises "sound judicial discretion in rejecting a tendered plea, Rule 11 is not violated." *Id.* (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)). Of note, the Sentencing Guidelines "require the district judge to give due consideration to the relevant sentencing range, even if the defendant and prosecutor recommend a specific sentence as a condition of the guilty plea." *Freeman v. United State*s, 564 U.S. 522, 530 (2011); *see United States v. Carrigan*, 778 F.2d 1454, 1462 (10th Cir. 1985) ("There is no absolute right to have a guilty plea accepted, and a court may reject a plea in the exercise of sound judicial discretion." (citing *Santobello*, 404 U.S. at 262)).

The power to sentence criminal defendants lies with the district court, not the parties themselves. *See Gall v. United States*, 552 U.S. 38, 51–53 (2007). Sentence bargaining, as done here, severely "implicates judicial discretion by limiting the sentencing power of the district court." *Robertson*, 45 F.3d at 1437 (noting specific sentence plea agreements "attempt to completely curtail that discretion, [and] a district court's decision to preserve that aspect of judicial power is not an abuse of discretion"). The Court is within its purview to reject an agreement when it "unduly cabin[s]" its sentencing discretion. *See United States v. Sabit*, 797 Fed. Appx. 218, 221 (6th Cir. 2019) (citing *In re Morgan*, 506 F.3d at 712). A district court is "free, in certain respects, to take an 'active role' once the agreement is disclosed." *United States v. Miles*, 10 F.3d 1135, 1140 (5th Cir. 1993); *see also United States v. Sandoval-Enrique*, 870 F.3d 1207, 1217 (10th Cir. 2017) (citing *United States v. Kraus*, 137 F.3d 447, 452 (7th Cir. 1998)). As a backstop to guarantee courts exercise "sound judicial discretion and adequately respect the principle of prosecutorial

independence," the Tenth Circuit has stated a district court "must set forth, on the record, the prosecution's reasons for framing the bargain and the court's justification for rejecting it." *Robertson*, 45 F.3d at 1438.

## II.    Parties' arguments

The Government asserts the plea agreement saves considerable resources and avoids both logistical and credibility issues with their main witness who is also in custody for alien smuggling. **Doc. 34 at 2–3**. The Government does not dispute "[a] sentence within the guideline range is the best approach to preventing unwarranted sentencing disparities between similarly situated defendants." *Id.* **at 3**. Again, however, they assert the disparity is warranted because of "the arrest of the cooperating witness." *Id.*

Defendant Padilla submits that several sentencing factors support the stipulated sentence. First, his history and characteristics are generally favorable—he is a father who has a long history of employment. **Doc. 33 at 1–2**. Additionally, he argues the nature and circumstances of the offense support the plea agreement's terms given the lack of harm imposed on the immigrants coupled with their lack of involvement in smuggling drugs or guns. *Id.* **at 2**. Padilla, like the Government, then claims issues with the prosecution's witness provide significant support for the sentence. *Id.* **at 3**.

## III.    Analysis

District courts must submit a defendant's sentence to "thorough adversarial testing," and determine if the Sentencing Guidelines "fail[] to properly reflect § 3553(a) considerations." *Rita v. United States*, 551 U.S. 338, 351 (2007). This Court's job is not to impose a reasonable sentence, but instead "impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th

Cir. 2007) (citation omitted). In so doing, the Court has "considerable leeway" in rejecting sentence-bargains. *Robertson*, 45 F.3d 1439.

Additionally, a court is permitted to consider uncharged conduct for sentencing purposes. *See United States v. Magallanez*, 408 F.3d 672, 684 (10th Cir. 2005) ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." (quoting 18 U.S.C. § 3661)). In *United States v. Allen*, the Tenth Circuit explained it was "unreasonable" for a district court to impose a sentence more than two-and-a-half times the top end of the Sentencing Guidelines based on uncharged conduct. *United States v. Allen*, 488 F.3d 1244, 1245 (10th Cir. 2007). This conclusion was not based upon the district court's consideration of uncharged conduct, but instead upon the excessive weight this conduct was given. *Id.* at 1259. Here, conversely, the parties have agreed to a sentence two-and-a-half to three times below the Sentencing Guidelines—giving exaggerated weight to a singular reason as justification.

The Court has considered the factors in § 3553(a), and several of those factors weigh heavily against accepting this Rule 11(c)(1)(C) plea agreement. First, the nature and circumstances of the offense as well as the history and characteristics of the defendant. Obviously, Defendant Padilla's family circumstances and work history play a role in sentencing. **Doc. 34 at 1–2**. But the Government's statement that Padilla is "no stranger to law enforcement"—as evidenced by his criminal history category III—neutralizes these positive characteristics. **Doc. 34 at 3; Doc. 30, PSR, ¶ 43**. As for the nature and circumstances of the offense: Padilla conspired to harbor and transport at least 28 illegal aliens while in possession of a firearm, fentanyl, and methamphetamine. These facts weigh heavily against accepting the plea agreement. 18 U.S.C. § 3553(a)(1). Second,

a sentence of 12 months and 1 day creates an unwarranted sentence disparity with other similarly situated defendants. 18 U.S.C. § 3553(a)(6). Third, the kinds of sentence and the sentencing range established for the offense committed by this category of defendant weigh against the proposed sentence. § 3553(a)(4), (5). Finally, the proposed sentence of 12 months and 1 day does not meet the goals of sentencing provided in § 3553(a)(2) because it does not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for this offense.

After reviewing Padilla's admissions in the plea agreement, the PSR, and the Sentencing Guidelines, this Court finds the proposed sentence of 12 months and 1 day insufficient to satisfy the goals of sentencing. At best, this case falls squarely inside the "heartland" of conspiracy to transport and harbor illegal aliens contemplated in the guidelines. *Rita*, 551 U.S. at 351. In an ordinary case, the sentencing range reflects "a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita*, 551 U.S. at 350). At worst, the nature and circumstances of the offense are more aggravating than ordinary. Whatever downward pressure Defendant Padilla's fatherhood and employment play (even when coupled with the Government's potential witness[2] issue), these considerations are outweighed by the upward pressure stemming from his weapon possession, drug possession, cartel connections, and the business-like methodology of interstate shipment of these aliens. *See United States v. Smith*, 2020 U.S. App. LEXIS 15391, at *4 (6th Cir. 2020) (taking into account "the conspiracy's interstate activity, the number of [victims], . . . and the length and continuous nature of the conspiracy"). In fact, the Court highlights the availability of law enforcement to testify regarding their on-scene actions and observations during the execution of the search warrant— specifically, their discovery of: (1) fentanyl, (2) methamphetamine, (3) a loaded Springfield

---

[2] The substantial risk that no conviction would result if case went to trial was a "justifiable reason" for a sentence that departs from the Sentencing Guidelines range. *United States v. Stone*, 374 F. Supp. 2d 983, 989–90 (D.N.M. 2005).

Armory Hellcat Pro 9mm firearm, (4) ledgers, and (5) at least 28 undocumented non-citizens. **Doc. 30, PSR, ¶¶ 13–14.** Likewise, Padilla's neighbors are presumably available to testify regarding their observations that Padilla's premises "continuously" had large groups of people coming and going as well as with the fact Padilla solicited help in transporting illegal aliens. **Doc. 30, PSR, ¶ 15**. Unlike in *Stone*, where the trial court "share[d]" in the United States' concern that "no conviction" was likely if the plea wasn't accepted—here, the Court is not concerned with the strength of the Government's case (and apparently neither is the Government). *Stone*, 374 F. Supp. 2d at 989–90; **Doc. 34 at 2**. For the reasons explained below, the Court concludes neither the logistics nor resources required to transport the coconspirator-witness are a justifiable reason for accepting the outside-guideline plea agreement.

### A. The nature and circumstances of the offense, history and characteristics of the defendant, and sentencing disparity

The nature and circumstances of the offense weigh against accepting the plea. Defendant Padilla orchestrated a substantially complex commercial enterprise wherein he and a co-conspirator harbored and transported illegal aliens across state lines for profit. **Doc 27 at 4–5.** By his own admission, Padilla was harboring at least 28 illegal aliens. *Id.* Moreover, the Court should view his relationship with a cartel as a cause for concern. **Doc. 30, PSR, ¶ 9**. At the time of his arrest, Padilla was also in the possession of a firearm, fentanyl, and methamphetamine. **Doc. 30, PSR, ¶ 14**. The circumstances of the offense are undoubtedly serious.

Padilla's history and characteristics as a supportive father with a long history of employment are mitigating. **Doc. 33 at 1–2**. Conversely, Padilla is not unfamiliar to the criminal justice system—as evidenced by his criminal history category III. **Doc. 30, PSR, ¶ 43**. When

taking into account his continued misconduct while incarcerated, this factor weighs against accepting the plea agreement. **Doc. 40, Second Add. to PSR at 1**.

Additionally, a sentence of 12 months and 1 day creates an unwarranted sentence disparity with other defendants who have been found guilty of similar conduct for conspiring to transport and harbor illegal aliens. Similarly situated defendants who conspired to transport and harbor 25–99 illegal aliens while in possession of a firearm would be sentenced to 30–37 months incarceration (so long as they also accept responsibility). **Doc. 30, PSR, ¶¶ 22–32**. Logistical hardship concerning a Government witness is not a justifiable reason for accepting this sweetheart plea agreement imposing a sentence two-thirds below the Guidelines range. *See* USSG § 6B1.2(b). The proposed sentence is not commensurate with the crime committed vis-à-vis similarly situated offenders. 18 U.S.C. § 3553(a)(6).

**B. Sentencing range and policy statement**

The Supreme Court explained that a "court may not accept the [Type-C] agreement unless the court is satisfied that '(1) the agreed sentence is within the applicable guideline range; or (2)(A) the agreed sentence is outside the applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity.'" *Hughes*, 138 S. Ct. at 1773 (quoting USSG § 6B1.2(c)).

Here, the plea offer is based primarily on the logistical and trial issues involving "the arrest of the cooperating witness." **Doc. 34 at 2–3**. The degree of the discrepancy is so great, however, that the plea hardly reflects the conduct as Padilla admitted in his plea agreement or the PSR. **Doc. 27 at 4–5; Doc. 30, PSR, ¶¶ 9, 14** (describing Padilla's cartel affiliation and listing then 10 grams of fentanyl and 10.2 grams of methamphetamine); *see United States v. Rutter*, 897 F.2d 1558, 1564 (10th Cir. 1990) (ruling that the sentencing court may additionally consult the PSR to determine relevant conduct). Whatever effect the Government's potential witness issue plays, it does not

serve as a justifiable reason for slashing Padilla's punitive exposure by two-thirds. These sentencing factors weigh against accepting the Rule 11(c)(1)(C) plea agreement. 18 U.S.C. § 3553(a)(4), (5); U.S.S.G. § 6B1.2(c).

### C. Seriousness of the offense, promoting respect for the law, and providing just punishment for the offense

A sentence of 12 months and 1 day is insufficient to satisfy the goals of sentencing provided in § 3553(a)(2)—namely, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. In the plea agreement, Padilla admits to harboring at least 28 illegal aliens for profit—whereby he would pay his coconspirator to transport the illegal aliens at a time from Albuquerque, New Mexico to Dallas, Texas. **Doc. 27, ¶ 9**. This is a serious offense. Padilla's criminal conduct suggests he does not obey or respect the law. Moreover, the underlying offense shows a disregard for both public safety and community. Accepting this plea agreement would send the precisely wrong message to Padilla and the public: transporting and harboring dozens of unlawful aliens isn't serious. These sentencing factors weigh heavily against accepting the plea agreement.

### CONCLUSION

The Court has carefully considered the Sentencing Guidelines, § 3553(a) factors, and sentencing goals. Specifically, the Court considered the Guidelines' range for the applicable category of offense committed by the applicable category of the defendant. In so doing, the Court concludes that a specific sentence of 12 months and 1 day incarceration is not sufficient to meet the goals of sentencing.

For the reasons set forth in this Memorandum Opinion and Order, the Court **REJECTS**

the Rule 11(c)(1)(C) plea agreement (**Doc. 27**) for a specific sentence of 12 months and 1 day.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE